Filed 12/4/23  R.D. v. Los Angeles Unified School Dist. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| R.D., a Minor, etc., et al., | B308957 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. Nos. BC644474, BC715363) |
| v. | |
| LOS ANGELES UNIFIED SCHOOL DISTRICT, | |
| Defendant and Respondent. | |

APPEAL from judgments of the Superior Court of Los Angeles County, Jon R. Takasugi, Judge.  Reversed with directions.

Carrillo Law Firm, Luis A. Carrillo, Michael S. Carrillo, Laura M. Jimenez; Esner, Chang, Boyer & Murphy, Holly N. Boyer and Kevin K. Nguyen for Plaintiffs and Appellants.

BDG Law Group and Michele M. Goldsmith for Defendant and Respondent.

———————————

Plaintiffs, minors C.R.B., R.D., and C.B.J.,[1] by and through their guardians ad litem, sued the Los Angeles Unified School District (LAUSD) for damages arising out of sexual abuse by an after-school care program employee, alleging LAUSD was negligent in hiring, retaining, and supervising the employee. Given the special relationship between public schools and their students, LAUSD supervisors and administrators have a duty of care to use reasonable measures to protect students from foreseeable injury at the hands of others.

This appeal requires deciding between two competing tests for the foreseeable injury element of this duty of care. Does foreseeability require as matter of law that school supervisory or administrative personnel knew or should have known the deviant propensities of the employee that commits the abuse and nevertheless hired, retained, or inadequately supervised him or her? Or does foreseeability not require such actual or imputed knowledge about the specific employee, and instead address the foreseeability of risk to students in general from sexual abuse by persons at the school?

The trial court answered that it was the former and granted LAUSD summary judgment, finding that LAUSD did not know of the specific risk posed by the plaintiffs' abuser until after the abuse ended. We conclude well-established case law shows it is the latter: that foreseeable injury includes the potential for sexual abuse by school staff in general. We therefore reverse the grant of summary judgment, and remand for further proceedings. We do, however, direct the trial court to enter summary

---

[1] Like the trial court and the parties, we use initials to refer to the minor plaintiffs. (Cal. Rules of Court, rule 8.90(b).)

adjudication in favor of LAUSD on a narrower issue, namely that LAUSD cannot be liable for a common law negligence cause of action not authorized by the Government Claims Act (Gov. Code,[2] § 810 et seq.).

We first discuss the fundamental legal principles applicable to this appeal, and then set forth the factual and procedural history of the summary judgment motions before us. We conclude with our analysis of why we reverse the grant of summary judgment, but direct the grant of summary adjudication on plaintiffs' common law negligence claim against LAUSD.

**LEGAL BACKGROUND**

The Government Claims Act delimits LAUSD's potential tort liability here. We thus begin by summarizing the applicable statutory basis for holding LAUSD liable in tort. We also outline the special relationship doctrine, which can impose a duty on an individual to protect another from harm caused by a third party, and the policy considerations set forth in *Rowland v. Christian* (1968) 69 Cal.2d 108 (*Rowland*) that may potentially limit any such duty.

**A.     The Government Claims Act**

"Under the Government Claims Act [citation], there is no common law tort liability for public entities in California; instead, such liability must be based on statute." (*Guzman v. County of Monterey* (2009) 46 Cal.4th 887, 897.) Section 815, subdivision (a) provides that, "Except as otherwise provided by statute:

---

[2] All undesignated statutory references are to the Government Code.

[¶] . . . A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." (*Ibid*.) Thus, "direct tort liability of public entities must be based on a specific statute declaring them to be liable, or at least creating some specific duty of care." (*Eastburn v. Regional Fire Protection Authority* (2003) 31 Cal.4th 1175, 1183.)

Plaintiffs premise their claims against LAUSD on section 815.2, which provides that a public entity can be held vicariously liable for a tort committed by its employee. That section states: "(a) A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative. [¶] (b) Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability." (*Ibid*.)

Section 820 addresses the scope of liability for public employees, providing: "(a) Except as otherwise provided by statute (including [s]ection 820.2), a public employee is liable for injury caused by his act or omission to the same extent as a private person. [¶] (b) The liability of a public employee established by this part (commencing with [s]ection 814) is subject to any defenses that would be available to the public employee if he were a private person." (*Ibid*.)

These statutes set forth " 'the general rule . . . that an employee of a public entity is liable for his torts to the same extent as a private person (§ 820, subd. (a)) and the public entity

4

is vicariously liable for any injury which its employee causes (§ 815.2, subd. (a)) to the same extent as a private employer (§ 815, subd. (b)).' [Citation.]" (*C.A. v. William S. Hart Union High School Dist.* (2012) 53 Cal.4th 861, 868 (*William S. Hart*).)

Plaintiffs do not seek to hold LAUSD vicariously liable under respondeat superior based on the abuser's acts while he worked for LAUSD. "Because sexually abusing a student is not within the course and scope of employment of a school district employee, a school district is not vicariously liable for the abuse itself but may be liable for such things as negligent hiring, retention, or supervision." (*Roe v. Hesperia Unified School Dist.* (2022) 85 Cal.App.5th 13, 25.) Plaintiffs assert that LAUSD is vicariously liable because the LAUSD personnel who hired, supervised, and retained the employee who abused plaintiffs failed to use due care to protect plaintiffs from abuse. This theory relies on the special relationship between school employees and schoolchildren, a doctrine to which we now turn.

## B. The Special Relationship Doctrine

"Recovery for negligence depends as a threshold matter on the existence of a legal duty of care. [Citation.]" (*Brown v. USA Taekwondo* (2021) 11 Cal.5th 204, 213 (*Brown*).) "The 'general rule' governing duty is set forth in Civil Code section 1714" which "establishes the default rule that each person has a duty 'to exercise, in his or her activities, reasonable care for the safety of others.' [Citation.]" (*Id.* at pp. 213, 214.) However, "the law imposes a general duty of care on a defendant only when it is the defendant who has ' "created a risk" ' of harm to the plaintiff, including when ' "the defendant is responsible for making the plaintiff's position worse." ' [Citations.] The law does not impose the same duty on a defendant who did not contribute to the risk

5

that the plaintiff would suffer the harm alleged." (*Id.* at p. 214.) Thus, "As a general rule, one owes no duty to control the conduct of another, nor to warn those endangered by such conduct." (*Davidson v. City of Westminster* (1982) 32 Cal.3d 197, 203.)

This general rule would appear to nix plaintiffs' claims. But the "special relationship" doctrine provides an exception. As our Supreme Court recently explained, "In a case involving harm caused by a third party, a person may have an affirmative duty to protect the victim of another's harm if that person is in what the law calls a 'special relationship' with either the victim or the person who created the harm. [Citations.] [¶] A special relationship between the defendant and the victim is one that 'gives the victim a right to expect' protection from the defendant, while a special relationship between the defendant and the dangerous third party is one that 'entails an ability to control [the third party's] conduct.' [Citation.]" (*Brown, supra*, 11 Cal.5th at pp. 215-216, fn. omitted.)

Cases have long recognized such a special relationship exists between school employees and students. (E.g., *Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 613 ["universities have a special relationship with their students and a duty to protect them from foreseeable violence during curricular activities"]; *William S. Hart, supra*, 53 Cal.4th at p. 877 [elementary school employees had a "special relationship . . . with [the] plaintiff, a student under their supervision, which relationship entailed the duty to take reasonable measures to protect [the] plaintiff from injuries at the hands of others in the school environment"]; *M. W. v. Panama Buena Vista Union School Dist.* (2003) 110 Cal.App.4th 508, 517 ["A special relationship is formed between a school district and its students

resulting in the imposition of an affirmative duty on the school district to take all reasonable steps to protect its students"] (*M. W.*).)

## C.   The *Rowland* Factors

When a special relationship exists "giving rise to an affirmative duty to protect," the court must also "consult the factors described in *Rowland* to determine whether relevant policy considerations counsel limiting that duty." (*Brown*, *supra*, 11 Cal.5th at p. 209.)  Those factors, which are considered at a relatively broad level of factual generality and not by using the facts and circumstances of a particular case, are " 'the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.' " (*Id*. at p. 217, quoting *Rowland*, *supra*, 69 Cal.2d at pp. 112-113.)  "When public agencies are involved, additional elements include 'the extent of [the agency's] powers, the role imposed upon it by law and the limitations imposed upon it by budget . . . .' [Citations.]" (*Thompson v. County of Alameda* (1980) 27 Cal.3d 741, 750.)

## FACTUAL AND PROCEDURAL BACKGROUND

## A.   Factual Background

Construed in the light most favorable to plaintiffs, the evidence shows the following.  During the 2014-2015 school year,

7

plaintiffs attended Arminta Street Elementary School (Arminta) and participated in the LA's Best after-school program, which took place on the Arminta campus. The LA's Best program ran Monday to Friday from approximately 2:30 p.m. to 5:45 p.m., except for Tuesdays, when it began at 1:30 p.m.

LAUSD hired John Salinas in April 2014 as a substitute playground worker for the LA's Best program. As a substitute, Salinas was assigned to a cluster of six schools, including Arminta. In December 2014, Salinas was assigned to Arminta as a permanent program worker, also known as a program "coach."

Emily Vasquez was the site coordinator for the LA's Best program at Arminta from 2013 through 2016. In that role she was responsible for supervising the staff, taking care of students being released to their parents, sending staff to trainings, conducting staff meetings, and performing other administrative functions. The coaches at Arminta were Salinas, Desiree Cornell, Gabriela Donis, Vanessa Mendez, Jasmine Melara, and Jasmin Avelar.

During 2014-2015, Connie Recart was a traveling supervisor for the LA's Best program responsible for a cluster of six campuses including Arminta. Karen Solorzano was a traveling program coach for LA's Best during that time, and she was responsible for the Arminta campus. During 2014-2015, Rene Ramirez was the principal at Arminta.

When assigned to the Arminta campus, Salinas oversaw about 30 students in a computer lab; plaintiffs were in his class at least some days in January 2015. During that month, Salinas sexually abused plaintiffs by (1) touching 11-year-old C.J.B.'s stomach, back, leg, and part of her buttocks; (2) putting his hand on 8-year-old C.B.R.'s hand, leg, back and underneath her

waistband; and (3) putting his hand on 9-year-old R.D.'s lower back and buttocks, poking her breast and genitals, and putting his finger inside her pants and underwear.

In February 2015, R.D. told her father that Salinas repeatedly touched her inappropriately. R.D.'s parents informed the police, who interviewed other students. Salinas was arrested on February 5, 2015. He was criminally prosecuted and convicted for his actions.

## B.    Plaintiffs Sue LAUSD

R.D. sued LAUSD on December 20, 2016. C.B.R. and C.J.B. jointly sued LAUSD on July 25, 2018. The two cases were consolidated. The operative complaints were C.B.R.'s and C.J.B.'s first amended complaint, filed on September 13, 2018, and R.D.'s first amended complaint, filed on July 3, 2019.

In their operative complaints, plaintiffs set forth a single negligence cause of action alleging that LAUSD, through Vasquez, Recart, and Ramirez, negligently hired, retained and supervised Salinas. Plaintiffs alleged, among other things, that Ramirez, Recart, and Vasquez "failed to take reasonable steps and/or implement reasonable safeguards to avoid" Salinas's abuse, "failed to properly supervise and/or monitor A[rminta] and L.A.'s Best program coaches," allowed Salinas "to operate in isolated environments, incapable of monitoring from the outside, wherein S[alinas] sexually molested [p]laintiffs," and failed to "have in place a system or procedure to reasonably investigate, supervise and monitor coaches and/or teacher's aides including S[alinas], to prevent pre-sexual 'grooming' and sexual harassment, molestation and abuse of children." Plaintiffs also alleged "that the employees and staff of A[rminta] and LAUSD had suspected or had reason to suspect the abuse was occurring

9

at the time, and prior to the abuse of [plaintiffs], and failed to further investigate into the matter."

## C.     LAUSD's Summary Judgment Motion

LAUSD moved for summary judgment against C.B.R. on October 31, 2019, and against R.D. and C.B.J. on February 21, 2020.  LAUSD contended that plaintiffs' claims for negligent supervision, hiring, and retention failed because no evidence suggested that any LAUSD administrator or supervisor knew or had reason to know of Salinas's "dangerous propensities." LAUSD argued, "To prove liability [for negligent hiring, supervision or retention], the plaintiff is required to demonstrate that a supervisory or administrative employee of the school district knew or had reason to know of the dangerous propensities of the employee who injured the plaintiff and acted negligently in hiring, supervising and retaining that employee." In support of its motions, LAUSD proffered evidence regarding its employees' lack of knowledge of Salinas's dangerous propensities.  This included evidence regarding his hiring (including a background check), other employees' observations of Salinas while at work, evidence that Salinas kept his door propped open with a kickstand, testimony that Salinas's students were permitted to and did play outside the classroom, and testimony from plaintiffs that they did not tell anyone affiliated with LA's Best about the abuse until R.D. told her father.

LAUSD also contended that plaintiffs could not sue it for common law negligence because a public entity such as LAUSD can only be sued if there is a statutory basis for liability, and sought summary adjudication on that issue.

Plaintiffs opposed the summary judgment motions, arguing that based on the special relationship between school personnel

10

and students, LAUSD supervisory employees had an "expansive" duty to take reasonable measures to protect students from sexual abuse by staff.  According to plaintiffs, this duty arose not just in cases where a specific staff member posed a risk of abuse, but where the type of harm was generally foreseeable.  Thus, plaintiffs argued, the LAUSD supervisors could be held liable for failing to take reasonable measures that would have precluded Salinas from abusing plaintiffs.  As to LAUSD's knowledge of Salinas's propensities, plaintiffs adduced evidence that LA's Best employees were not asked for references before being hired; that Salinas was "more interactive" with the girls in his class than with the boys, which some coaches thought was "weird"; that Salinas kept his classroom door closed and locked; that Salinas kept his students inside the classroom instead of letting them participate in required outdoor physical activity; and evidence to suggest LAUSD personnel avoided taking steps to observe Salinas's classroom and become aware what was going on there.

## D.    The Trial Court Grants Summary Judgment

The trial court granted summary judgment against C.B.R. on January 22, 2020, and against C.J.B. and R.D. on September 24, 2020.  The court concluded, "To prove liability, the plaintiff is required to demonstrate that a supervisory or administrative employee of the school district knew or had reason to know of the dangerous propensities of the employee who injured the plaintiff and acted negligently in hiring, supervising and retaining that employee."  The court cited *William S. Hart* for this proposition.  The court then found that no evidence suggested any supervisor had actual or constructive knowledge that Salinas posed a threat to students.  As to plaintiffs' argument that Salinas's behavior gave notice that he might be a

11

sexual predator, because he isolated his students by keeping the classroom door closed and by opting out of outdoor physical activity time, and was overly familiar with female students, the court found that the evidence was not sufficient for a reasonable trier of fact to conclude that LAUSD supervisory employees had actual or constructive knowledge of Salinas's dangerous propensities.

The trial court also concluded that plaintiffs could not assert a common law negligence claim against LAUSD because, under California law, the liability of public entities "is wholly statutory."

On September 25 and November 12, 2020, the court entered judgments in LAUSD's favor. Plaintiffs timely appealed.

## DISCUSSION

### A. Summary Judgment Principles and Standard of Review

" 'Because this case comes before us after the trial court granted a motion for summary judgment, we take the facts from the record that was before the trial court when it ruled on that motion. [Citation.] " 'We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained.' " [Citation.] We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party. [Citation.]' [Citation.]" (*Lonicki v. Sutter Health Central* (2008) 43 Cal.4th 201, 206.)

A defendant who moves for summary judgment "bears the burden of persuasion that 'one or more elements of' the 'cause of action' in question 'cannot be established,' or that 'there is a

12

complete defense' thereto. [Citation.]" (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850; see Code Civ. Proc., § 437c, subds. (o) & (p)(2).) Such a defendant also "bears the initial burden of production to make a prima facie showing that no triable issue of material fact exists. Once the initial burden of production is met, the burden shifts to the [plaintiff] to demonstrate the existence of a triable issue of material fact." (*Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1250.) A triable issue of material fact exists " ' "if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." [Citation.]' [Citations.]" (*Janney v. CSAA Ins. Exchange* (2021) 70 Cal.App.5th 374, 389-390.)

**B.     The Duty of Care Is Not Limited to Situations Where LAUSD Employees Know or Have Reason to Know of Specific Danger Posed by the Actual Abuser**

Relying on *William S. Hart*, the trial court found the duty owed by LAUSD's supervisory employees to protect students from negligent or intentional harm caused by a third person arose only if those employees knew or had reason to know of Salinas's dangerous propensities. But neither *William S. Hart* nor any other case involving the special relationship between a primary or secondary school and its students sets forth such a test.

Instead, as stated in *William S. Hart*, as well as cases that came before and after it, the special relationship between school employees and students imposes on such employees "the duty to use reasonable measures to protect students from foreseeable injury at the hands of third parties acting negligently or intentionally." (*William S. Hart, supra*, 53 Cal.4th at p. 870, fn.

13

omitted.)  Contrary to LAUSD's argument, " 'the issue of "foreseeability" does not depend upon the foreseeability of a particular third party's act, but instead focuses on whether the allegedly negligent conduct at issue created a foreseeable risk of a particular kind of harm.' [Citation.]" (*M. W.*, *supra*, 110 Cal.App.4th at p. 519, italics omitted.)

A long, lamentable history shows the reasonable foreseeability of sexual abuse by employees of entities that provide activities exclusively for children, even where the organization has no advance knowledge that the particular employee who committed the abuse had a propensity to do so. Without cataloging here criminal prosecutions for such abuse, numerous civil cases involving the school setting attest to the existence of this potential risk.  (E.g., *William S. Hart*, *supra*, 53 Cal.4th 861; *Roe v. Hesperia Unified School Dist.*, *supra*, 85 Cal.App.5th 13; *Doe v. Lawndale Elementary School Dist.* (2021) 72 Cal.App.5th 113; *M. W.*, *supra*, 110 Cal.App.4th 508.)  As a result, the " 'special relationship[ ] between children and their adult caregivers . . . give[s] rise to a duty to prevent harms caused by the intentional or criminal conduct of third parties' " such as sexual abuse.  (*Doe v. United States Youth Soccer Assn., Inc.* (2017) 8 Cal.App.5th 1118, 1129 (*Youth Soccer*).)  LAUSD and its employees thus had a duty to use reasonable measures to protect students from such a foreseeable risk of harm even if they did not know or have reason to know of the specific risk posed by Salinas.  The special relationship at issue here "puts the defendant in a unique position to protect the plaintiff from injury. The law requires the defendant to use this position accordingly." (*Brown*, *supra*, 11 Cal.5th at p. 216.)

LAUSD appears to posit that *William S. Hart* defines foreseeable risk via the facts described in that case, which involved claims that school personnel knew or should have known the employee at issue had abused minors in the past and had a propensity to commit such abuse. *William S. Hart* came to our Supreme Court after the defendant school district's demurrer was sustained, and thus the issue was whether the plaintiff student had stated a viable cause of action. (*William S. Hart*, *supra*, 53 Cal.4th at p. 865.) The plaintiff alleged a guidance counselor had sexually abused him, and asserted that other school employees had negligently hired, retained, and supervised the guidance counselor. (*Id.* at pp. 866-867.) The plaintiff alleged that these other district employees " 'knew or should have known and/or were put on notice' of [the guidance counselor]'s past sexual abuse of minors and her 'propensity and disposition' to engage in such abuse; consequently, they 'knew or should have known that [the guidance counselor] would commit wrongful sexual acts with minors, including [the p]laintiff.' " (*Id.* at p. 866.)

Because *William S. Hart* reached the court following demurrer, the court assumed the truth of these allegations. (*William S. Hart*, *supra*, 53 Cal.4th at p. 866.) The question presented in *William S. Hart* was whether school employees or just the school district had a special relationship with students. (*Id.* at p. 865.) The court did *not* address whether foreseeability is limited to situations where an individual's proclivities are known or should be known; it simply recited that knowledge as the plaintiff's theory of the case. At no point did the court indicate the legal duty it recognized was limited to situations where school supervisors know or have reason to know that a

15

specific school employee has a propensity to harm students. "A case is not authority for a proposition not considered therein or an issue not presented by its own particular facts." (*McConnell v. Advantest America, Inc.* (2023) 92 Cal.App.5th 596, 611.)

We further observe that, in support of its holding, *William S. Hart* cited with approval three earlier cases in which courts concluded that school personnel owed a duty to protect students from harm by a third party *without* knowing or having reason to know that a particular third-party individual posed a specific risk of harm. (*J.H. v. Los Angeles Unified School Dist.* (2010) 183 Cal.App.4th 123, 148 [holding staff in charge of an after school program could be held liable for failing to prevent a sexual assault of the seven-year-old plaintiff by other students in the program; "although one might argue that the instant case raises the question whether it is foreseeable that first and second grade students would sexually assault [the] plaintiff, the question is accurately framed as whether it is foreseeable that one child may be assaulted by another child during the [after school program] in the absence of adequate protective safeguards"]; *M. W., supra*, 110 Cal.App.4th at p. 520 [concluding school district could be held liable for a sexual assault of a minor student by another student in a school bathroom because the type of assault was foreseeable]; *Leger v. Stockton Unified School Dist.* (1988) 202 Cal.App.3d 1448, 1459-1460 [concluding the plaintiff student's allegations that he was attacked by a non-student while in a school bathroom stated a viable claim against school employees for failure to protect where the employees knew or should have known "that attacks were likely to occur there"].) Nothing in *William S. Hart* indicates the high court disagreed with or disapproved of these precedents and announced a new, more limited test for

16

foreseeability.  And cases following *William S. Hart* have continued to hold that "school administrators have a duty to protect students from sexual abuse by school employees, even if the school does not have actual knowledge of a particular employee's history of committing, or propensity to commit, such abuse." (*Doe v. Lawndale Elementary School Dist.*, *supra*, 72 Cal.App.5th at p. 119.)

In finding that plaintiffs had to prove either actual or constructive knowledge of misconduct, the trial court also cited *Margaret W. v. Kelley R.* (2006) 139 Cal.App.4th 141 and *Chaney v. Superior Court* (1995) 39 Cal.App.4th 152.[3]  Both cases involved the special relationship between a host parent and children invited into the parent's home, which differs meaningfully from the special relationship between a school and its students.  (See *M. W.*, *supra*, 110 Cal.App.4th at p. 524 [concluding different policy concerns are applicable to the responsibilities of school districts towards their students as opposed to the responsibilities of adults who invite children into their home].)  The issue of foreseeable harm also differs between these two distinct types of relationships.  As the court in *Youth Soccer*, *supra*, 8 Cal.App.5th 1118 observed, *Chaney* and *Margaret W.* "involved criminal conduct by family members or guests that occurred in homes, and there was no evidence to indicate that criminal conduct by these individuals was in any way foreseeable." (*Youth Soccer*, *supra*, at p. 1135.)  It was

---

[3] The court additionally cited *Juarez v. Boy Scouts of America, Inc.* (2000) 81 Cal.App.4th 377, which our high court later disapproved in *Brown*, *supra*, 11 Cal.5th at page 222, footnote 9.

17

therefore appropriate in *Chaney* and *Margaret W.* to impose an actual or constructive knowledge requirement about an individual's criminal propensities when weighing foreseeability. Here, in contrast, there can be no serious dispute of the extant risk that sexual predators will exploit children in the school environment. Thus, "[i]n contrast to *Chaney* . . . [and] *Margaret W.*, . . . [there exists here] a reasonably foreseeable risk of sexual abuse to children participating in defendant['s] programs" (*Youth Soccer*, *supra*, at p. 1135), regardless of any knowledge regarding Salinas individually.

We accordingly reject the argument that the duty of a public school's supervisory and administrative employees to protect students from sexual abuse is limited to situations where those employees have reason to suspect that a specific individual has a propensity to commit such abuse. Instead, school administrative and supervisory employees have a "duty to use reasonable measures to protect students from foreseeable injury," which includes the potential for sexual abuse by school staff. (*William S. Hart*, *supra*, 53 Cal.4th at p. 870.)

Our dissenting colleague appears to agree with our definition of LAUSD's legal duty, but then cites *William S. Hart* and other distinguishable cases discussed above to argue we should nevertheless apply the narrower test advocated by LAUSD: that plaintiffs had to show LAUSD knew or should have known that Salinas was prone to sexually abuse students. The dissent reads LAUSD's summary judgment papers as (1) agreeing it had a duty to use reasonable measures to protect plaintiffs, (2) claiming LAUSD fulfilled that duty because it took reasonable measures given that it had no actual or constructive knowledge that Salinas was prone to abuse, and (3) thus

18

concluding LAUSD could be liable only if it knew or should have known Salinas posed an increased risk. In the dissent's view, LAUSD's summary judgment motions "contested the extent of its actual or imputed knowledge not as an issue of duty but of breach, arguing its conduct was reasonable because it had no actual or constructive knowledge that Salinas was dangerous." (Dis. opn. *post*, at p. 17.)

We are concerned that the dissent has not given full measure to the actual contents of LAUSD's motion papers or to the case law we have analyzed above. First, for the reasons explained above, we believe the dissent misreads *William S. Hart* and relies on inapposite cases such as *Margaret W. v. Kelley R.*, *supra*, 139 Cal.App.4th 141 and *Chaney v. Superior Court*, *supra*, 39 Cal.App.4th 152 with regard to the scope of LAUSD's duty of care. For example, the dissent quotes a passage in *William S. Hart* stating that school supervisory employees must guard pupils against abuse from "foreseeable sources, including any teachers or counselors they know or have reason to know are prone to such abuse." (*William S. Hart*, *supra*, 53 Cal.4th at p. 871.) As explained above, the court's holding was not so limited, and the court's use of the word "including" makes clear that its definition of duty was not restricted to the alleged facts in that case.

Second, in our view, the dissent does not accurately describe what LAUSD and the plaintiffs argued to the trial court. LAUSD did not admit that it had a duty to take reasonable measures to protect plaintiffs absent knowledge of Salinas's proclivities. Instead, to quote its summary judgment motion against C.B.R. and C.J.B., LAUSD argued it could be liable only where "a supervisory or administrative employee of the school

19

district knew or had reason to know of the dangerous propensities of the employee who injured the plaintiff and acted negligently in hiring, supervising and retaining that employee."[4] In other words, LAUSD argued that if its administrators and supervisors had no actual or constructive knowledge of Salinas's propensities, they had no duty to do anything.

Contrary to the dissent's description of the plaintiffs' allegations, plaintiffs' claims were not limited to what LAUSD knew or should have known about Salinas; as described above, the allegations of plaintiffs' complaints were broader than that. Nor was plaintiffs' opposition to summary judgment based solely on what LAUSD knew or should have known about Salinas. To quote its opposition, plaintiffs argued (in accord with the case law cited above) that the court's task was " ' "not to decide whether a particular plaintiff's injury was reasonably foreseeable in light of a particular defendant's conduct but rather to evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed on the negligent party." ' "

Finally, we respectfully disagree with our dissenting colleague that LAUSD's summary judgment motions contested the issue of breach and/or causation such that we can reach those issues now. LAUSD's summary judgment motions were premised on a narrow issue of duty, specifically that LAUSD's supervisory

---

[4] LAUSD's motion for summary judgment against R.D. argued the same thing slightly differently: that LAUSD could only be liable if its "administrative and supervisory employees knew or had reason to know that a particular employee posed a risk of abuse to a particular minor, but nonetheless negligently hired, supervised, or retained that employee."

20

employees only owed a duty to protect plaintiffs from sexual abuse by a third party if those supervisory employees knew or had reason to know that the third party had a propensity to abuse. Its motions were not premised on plaintiffs' inability to show breach or causation. LAUSD's separate statements focused on what LAUSD knew or should have known about Salinas; they did not address what LAUSD does more generally in hiring, retaining, and supervising employees such as Salinas to guard against the potential for sexual abuse, which allegations were part of plaintiffs' negligence claim. Although we may affirm a grant of summary judgment on any ground supported by the record (*Jimenez v. County of Los Angeles* (2005) 130 Cal.App.4th 133, 140), it still must be a " 'ground that the parties had an adequate opportunity to address in the trial court.' " (*Thurston v. Midvale Corp.* (2019) 39 Cal.App.5th 634, 639.) Plaintiffs had no such opportunity here with regard to breach and causation given how LAUSD framed the issue below.

LAUSD therefore failed to carry its initial burden in moving for summary judgment to show that an element of plaintiffs' cause of action (in this case, duty) could not be established. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar v. Atlantic Richfield Co., supra*, 25 Cal.4th at p. 850.) Thus, the burden never shifted to plaintiffs to demonstrate the existence of a triable issue of material fact, and the trial court erred in granting summary judgment to LAUSD. (*Aguilar*, at p. 850.)

Although we reject LAUSD's framing of the applicable duty of care, we also reject plaintiffs' description of the duty as "expansive." Paraphrasing our Supreme Court, "[w]e emphasize that a duty of care is not the equivalent of liability," that our holding should not "be read to create an impossible requirement"

21

that LAUSD prevent all foreseeable harm, and that LAUSD is "not the ultimate insurer[ ] of all student safety." (*Regents of University of California v. Superior Court*, *supra*, 4 Cal.5th at p. 634.) Further, the duty of care does not require "expansive" measures; it requires *reasonable* measures. (See *William S. Hart*, *supra*, 53 Cal.4th at p. 871.)

## C.    The *Rowland* Factors

As set forth in our opening summary of the legal principles applicable to this matter, the *Rowland* factors may support further limiting LAUSD's duty of care. Although both the plaintiffs and LAUSD discuss *Rowland* in their appellate briefing, neither presented arguments or evidence on that question to the trial court. We accordingly decline to undertake a *Rowland* analysis in the first instance, as the record does not include the evidence necessary to conduct a proper *Rowland* analysis. Aspects of that analysis such as the potential burden on LAUSD and the consequences to the community of imposing a duty, and the availability, cost, and prevalence of insurance for the negligence claims involved, are fact intensive and we do not agree with cases such as *Doe v. Lawndale Elementary School Dist.*, *supra*, 72 Cal.App.5th at pages 128-137 that undertake that analysis in the absence of what we believe are necessary facts.

We further note that on remand LAUSD and/or plaintiffs can, if they believe the evidence and law support it, bring a further summary judgment or adjudication motion regarding the *Rowland* factors, as well as other issues such as breach and causation not previously addressed. (See *Nieto v. Blue Shield of California Life & Health Ins. Co.* (2010) 181 Cal.App.4th 60, 73 [Code Civ. Proc. § 437c, subd. (f)(2) did not prohibit a subsequent

summary judgment motion which "targeted an issue . . . not previously asserted"]; *Patterson v. Sacramento City Unified School Dist.* (2007) 155 Cal.App.4th 821, 827 [Code Civ. Proc. § 437c, subd. (f)(2) did not prohibit a second motion for summary judgment where "[the] two motions were not identical and involved different legal theories" on duty].) This is particularly true here given that the Supreme Court's clarification of the applicable law in *Brown* did not occur until after the summary judgment proceedings below, such that neither the parties nor the trial court had the benefit of its reasoning. We express no opinion on the outcome of any *Rowland* analysis or motion related to breach or causation.

**D.    LAUSD Is Entitled to Summary Adjudication on the Issue that Its Liability Must Be Based on a Statute**

In its motions, LAUSD sought summary adjudication on the issue that it "cannot be liable for a common law cause of action for [n]egligence because that cause of action is not authorized by statute." The trial court ruled in favor of LAUSD on this issue, although it did not specifically grant summary adjudication because it granted summary judgment.

As the trial court noted, it is unclear from plaintiffs' complaints whether their negligence cause of action is based solely on the applicable Government Claims Act provisions or also includes a free-standing common law negligence claim. This lack of clarity is presumably why LAUSD moved for summary adjudication to confirm that any negligence liability it might have was only pursuant to the Government Code. On appeal, plaintiffs make no argument they can recover from LAUSD under a theory that LAUSD itself was negligent; they instead acknowledge that the applicable theory under which LAUSD can

23

be held liable is vicarious liability pursuant to section 815.2, subdivision (a).

Because LAUSD can only be held liable if there is a statutory basis for liability, LAUSD cannot be sued for common law negligence independent of the Government Claims Act. (*Guzman v. County of Monterey*, *supra*, 46 Cal.4th at p. 897; see *Eastburn v. Regional Fire Protection Authority*, *supra*, 31 Cal.4th at p. 1183 [Civ. Code, § 1714 does not provide a statutory basis for holding a public entity liable].) LAUSD was thus entitled to summary adjudication on the "issue of duty" that it cannot be liable for a common law negligence cause of action not authorized by statute. (Code Civ. Proc., § 437c, subd. (f)(1).)

## DISPOSITION

The judgments are reversed, the trial court is directed to enter summary adjudication in favor of LAUSD on the issue that LAUSD cannot be liable for a common law negligence cause of action not authorized by statute, and the case is remanded for further proceedings. Plaintiffs are awarded their costs on appeal.

NOT TO BE PUBLISHED

WEINGART, J.

I concur:

BENDIX, Acting P. J.

24

CHANEY, J., Dissenting

## A.   Introduction

I agree with the majority's holding that a school district has an affirmative duty to use reasonable measures to protect its students from foreseeable harm at the hands of others.  I depart from the majority, however, in their holding that the Los Angeles Unified School District (LAUSD or the district) failed to establish that no material triable issue exists as to whether it took reasonable steps to protect its students in this case.

## B.   Background

For the most part, I accept the majority's recitation of the legal, factual, and procedural background.

### 1.   Complaints

In their operative complaints, plaintiffs alleged in a single negligence cause of action that through the actions of Rene Ramirez (Principal at Arminta Street Elementary School), Emily Vasquez (site coordinator for LA's Best, an on-site after-school program), and Connie Recart (LA's Best's traveling supervisor), LAUSD negligently hired, supervised, and retained John Salinas, a "coach" for the LA's Best program who oversaw students in a computer lab.

#### a.   Negligent Hiring/Retention

Sprinkled throughout each complaint, plaintiffs alleged Vasquez, Ramirez, and Recart were "put on notice" and "knew or should have known" about Salinas's harmful propensities and activities before and during his employment.

In support of their claims for negligent hiring and retention, for example, plaintiffs alleged that "[p]rior to and after the first incident of sexual molestation and abuse of [themselves], . . . LAUSD . . . knew or should [*sic*: would] have

known that SALINAS was sexually, physically, and mentally abusing students, . . . if the LAUSD had conducted a reasonable investigation into SALINAS's background prior to hiring . . . him."

Plaintiffs alleged that "LAUSD owed Plaintiff a duty to not hire and retain SALINAS, given his dangerous and exploitive propensities, which Defendant LAUSD knew or should have known had the LAUSD engaged in a meaningful and adequate investigation of his background prior to his employment."

Plaintiffs alleged that "LAUSD and its employees . . . were put on notice, and had reason to know that SALINAS had previously engaged in abusive and inappropriate conduct, and that it was foreseeable that SALINAS was engaging, or would engage in illicit sexual activities with [plaintiffs] under the cloak of his authority, confidence, and trust, bestowed upon him by [LAUSD]."

Plaintiffs alleged that "LAUSD and its employees . . . were placed on notice that SALINAS had engaged in dangerous and inappropriate conduct, both before his employment within Defendants, and during that employment. . . . [O]ther third parties, minors, students, law enforcement officials and parents informed Defendant LAUSD of inappropriate conduct committed by SALINAS . . . [and] other LAUSD staff knew about SALINAS' inappropriate conduct with minor students but did nothing to stop it. [¶] Even though Defendant LAUSD knew or should have known of these activities by SALINAS, . . . its employees . . . failed to use reasonable care in investigating SALINAS . . . ."

### b. Negligent Supervision

In support of their claim for negligent supervision, plaintiffs alleged that "employees and staff of L.A.'s Best . . . and

2

LAUSD had suspected or should have suspected the abuse was occurring at the time, and failed to investigate into the matter further" or "provide reasonable supervision."

### 2. Summary Judgment

#### a. Motion

LAUSD moved for summary judgment on the grounds that (1) it was not liable for negligent supervision, hiring, or retention because no evidence suggested it had actual or constructive knowledge of Salinas's dangerous propensities, and (2) the Government Claims Act did not authorize a cause of action against a public entity for direct negligence.

As the majority notes, the district argued, "To prove liability [for negligent hiring, supervision or retention], the plaintiff is required to demonstrate that a supervisory or administrative employee of the school district knew or had reason to know of the dangerous propensities of the employee who injured the plaintiff and acted negligently in hiring, supervising and retaining that employee." (Maj. opn. *ante*, at p. 10.)

#### i. Negligent Hiring

In its separate statement of undisputed material facts, the district adduced plaintiffs' discovery responses, in which plaintiffs cited as facts supporting their negligent hiring claim that the district "knew or should have known that Salinas possessed [dangerous and exploitive] tendencies had they properly and adequately investigated into Salinas's background prior to [hiring him]."

To counter the facts plaintiffs asserted as supporting their claims, the district offered evidence that preemployment background checks on Salinas performed by the California Department of Justice and the Federal Bureau of Investigation

3

came back clear, the Los Angeles Police Department (LAPD) reported that Salinas had no convictions or pending criminal matters, and as part of the application process Salinas swore under penalty of perjury that he had never been accused of or investigated for misconduct involving a minor.

### ii. Negligent Retention

With respect to plaintiffs' negligent retention claim, the district adduced evidence that immediately upon learning that R.D. alleged inappropriate conduct by Salinas, Vasquez notified the Department of Children and Family Services (DCFS) and the LAPD and suspended Salinas.

### iii. Negligent Supervision

With respect to plaintiffs' negligent supervision claim the district adduced discovery responses in which plaintiffs cited as facts supporting their claim that the district "placed Salinas' classroom in a secluded area of campus, so that his classroom was not readily visible to staff. Moreover, Salinas was allowed to keep his classroom door closed . . . ."

To counter the facts that plaintiffs asserted as supporting their claims, the district adduced evidence that Salinas's classroom was not secluded, his door was not always closed, and several supervisors and coworkers visited the classroom several times.

As to whether Salinas's classroom was secluded, several witnesses testified that the classroom, which was next door to the library, was visible from the LA's Best office's windows, Vasquez's office, the play yard, and the school's main office.

As to whether the classroom door was always closed, the district offered plaintiff C.B.R.'s deposition testimony, in which she stated Salinas "always" kept his door propped open with a

4

kickstand far enough to allow entry without moving the door, Vasquez would look in on the room about once a week "to make sure everything was okay," and LA's Best coaches would occasionally come into the room. The district also offered the testimony of C.J.B., who stated that Salinas's door would be propped open at the beginning of class, but she did not remember if it was kept open at other times. She testified that Salinas generally kept the door closed as a policy, but her desk faced away from it, and she would not watch it.

As to supervision, the district offered evidence that Salinas's classroom was supervised by three individuals: Arminta's principal, a site coordinator, and an LA's Best program coach, and was visited by several coworkers.

School principal Rene Ramirez testified that "he would walk around when the kids were outside," and visited Salinas's classroom two or three times a week, observing Salinas with his students, and did not recall the door ever being closed.

Site coordinator Vasquez testified she would walk the hallways and look into the classroom about once a week randomly and "surprisingly" to make sure everything was okay and the students were behaving.

Karen Solorzano, an LA's Best program coach, testified she met with Salinas twice, including observing and evaluating his classroom in January 2015 for an hour, and discussed her evaluation with Vasquez.

A variety of coworkers also came into the classroom during the day. C.J.B. testified that Vasquez could see the classroom from the hallway outside her office, and occasionally visited, as did other LA's Best coaches.

The district also offered evidence that before and during Salinas's employment it provided him with written district policies regarding child abuse reporting, sexual harassment, and codes of conduct and ethics.

### b. Oppositions

In opposition to the motions, plaintiffs argued that Salinas's teaching style was ominous from the beginning, putting the district on notice that he might be a sexual predator. He isolated his students by keeping the classroom door closed and opting out of recess, and was overly familiar with female students, in particular by treating R.D. as his "teacher's pet."

Plaintiffs presented evidence that LAUSD (1) permitted Salinas to violate an LA's Best open-door policy by keeping his classroom door closed; (2) permitted Salinas to keep his students inside the classroom in violation of state regulations that they be given 30 minutes of outside time; (3) failed to investigate when it discovered Salinas was overly attentive to female students; and (4) failed to supervise or train him.

### i. Open-Door Policy

In support of plaintiffs' argument that Salinas isolated students by keeping the classroom door closed, several program coaches, including Jasmine Melara, testified that LA's Best coaches were not allowed to leave classroom doors closed while class was in session. (Melara testified the policy was in writing, but no written LA's Best policy exists in the record, and there was no evidence that *LAUSD* had any kind of policy about keeping doors open.)

Coach Jasmin Avelar testified she did not personally observe Salinas's door being always kept closed but would see it closed when she was with her class on the playground. However,

6

no evidence established what time of day this was, or whether Salinas's class was in session at that time. (Other testimony suggested that all LA's Best students took recess at the same time.) Program coach Desiree Cornell testified that she remembered seeing Salinas's door being closed but did not know if he was in the classroom at the time. Avelar, Cornell, and Melara testified they were aware that Salinas's door was often closed, but none testified as to how often the door was personally observed to be closed, when or for how long, or for what purpose, or whether the closures were at a time when Salinas and his students were in class. Melara testified that Salinas would close his classroom door because the nearby playground was too loud. However, she also admitted that her classroom was not near Salinas's, and she never had occasion to walk by. She was told by two other coaches that Salinas kept his door closed.

### ii. Outdoor Activity

In support of plaintiffs' argument that Salinas isolated students by keeping them indoors, several coaches testified that LA's Best policy afforded students at least 30 minutes of outdoor physical activity time. C.B.R. and C.J.B. testified that after the school bell rang, students would go to the playground, where LA's Best coaches waited. After signing in, the students would play for about an hour, unless it was raining. They would then go to the cafeteria for supper for about 45 minutes, after which Salinas would take them to the computer lab to start homework. After their homework was done, they could play on the computers until pick-up.

Melara testified that Vasquez knew Salinas often violated the outside playtime policy. C.J.B. testified that Salinas routinely violated the recess policy by keeping his students in the

7

computer lab almost the whole day. But Recart, LA's Best traveling supervisor, was never notified that Salinas failed to take his class outside, and Salinas was never reprimanded.

### iii. Overattentiveness to Female Students

In support of plaintiffs' argument that Salinas was overly attentive to female students, Melara testified that R.D. was "going to" Salinas's class "on a regular basis, and Vasquez thought it was "weird" that Salinas interacted more with female students than with male students. Another coworker testified that R.D. was a "teacher's pet."

### iv. Supervision

In support of plaintiffs' argument that the district failed to supervise Salinas, several witnesses testified that Salinas's classroom was in a far corner of the Arminta campus, unobservable from other classrooms or the LA's Best office doorway.

LA's Best coaches Jasmine Avelar, Vanessa Mendez, Jasmine Saggeth Melara, and Gabriella Donis each testified that in 2015, one or another of the school site supervisory personnel—Ramirez, Recart and Vasquez—failed to visit or observe *their* classrooms, and no one recalled seeing anyone visit Salinas's classroom.

Connie Recart, LA's Best traveling supervisor, testified she could not recall ever observing Salinas's classroom or asking anyone else to observe it, and did not know if anyone conducted an employee evaluation of Salinas.

Vasquez, the site coordinator at Arminta and Salinas's direct supervisor during the 2014/2015 school year, testified she could not remember meeting with Salinas to review his activity

planning sheets, complete a QPAT for his classroom, or meet with him to discuss his performance as a program coach.

### c. Ruling

As the majority notes, the trial court, relying on *C.A. v. William S. Hart Union High School Dist.* (2012) 53 Cal.4th 861, 869 (*William S. Hart*), concluded that "[t]o prove liability, the plaintiff is required to demonstrate that a supervisory or administrative employee of the school district knew or had reason to know of the dangerous propensities of the employee who injured the plaintiff and acted negligently in hiring, supervising and retaining that employee." (Maj. opn. *ante*, at p. 11.)

As to the district's vicarious liability under Government Code section 815.2 for the negligence of administrators and supervisors in hiring, retaining, and supervising a school employee, the court found that no evidence suggested any supervisor had actual or constructive knowledge that Salinas posed a threat to students.

The court found that plaintiffs' arguments about whether Arminta administrators visited Salinas's classroom with sufficient frequency or provided sufficient monitoring, training, and supervision were irrelevant to the only issue raised by the district's motion: that it had no warning that Salinas posed a threat to students.

As to plaintiffs' argument that Salinas's teaching style was ominous from the beginning, giving clear warning that he might be a sexual predator because he isolated his students by keeping the classroom door closed and opting out of recess, and was overly familiar with female students, in particular making R.D. his "teacher's pet," the court found that no evidence suggested supervisory employees had actual or constructive knowledge of

9

Salinas's dangerous propensities sufficient to satisfy a "knew or should have known" requirement.

The court found that plaintiffs' complaints and oppositions to summary judgment left it ambiguous whether they intended to assert a theory of common law negligence against the district, but in any event no such theory was cognizable. (*Hoff v. Vacaville Unified School District* (1998) 19 Cal.4th 925, 932.)

## C. Discussion

The district moved for summary judgement on the ground that the actions had no merit, arguing no triable issue existed as to whether it may be held vicariously liable for the conduct of its administrative and supervisory personnel in negligently hiring, retaining or supervising Salinas because it had no actual or constructive knowledge of his abusive propensities or conduct.

The issue on appeal is whether any triable issue exists as to such knowledge.

### 1. Legal Principles

I agree with the majority's discussion setting forth summary judgment principles, the standard of review, and the scope of a public school's duty to take reasonable steps to protect its students against foreseeable harm at the hands of its employees. I also agree that summary adjudication should be granted to the extent that plaintiffs allege common law negligence.

"[A] school district and its employees have a special relationship with the district's pupils, a relationship arising from the mandatory character of school attendance and the comprehensive control over students exercised by school personnel, 'analogous in many ways to the relationship between parents and their children.'" (*William S. Hart*, *supra*, 53 Cal.4th

10

at p. 869.)  Because of this special relationship, "a public school district may be vicariously liable under section 815.2 for the negligence of administrators or supervisors in hiring, supervising and retaining a school employee who sexually harasses and abuses a student." (*Id.* at p. 879.)

School supervisors must guard pupils against abuse from "foreseeable sources, including any teachers or counselors they know or have reason to know are prone to such abuse." (*William S. Hart, supra,* 53 Cal.4th at p. 871.)  "[I]f individual District employees responsible for hiring and/or supervising teachers knew or should have known of [a teacher's] prior sexual misconduct toward students, and thus, that he posed a reasonably foreseeable risk of harm to students under his supervision, . . . the employees owed a duty to protect the students from such harm." (*Virginia G. v. ABC Unified School Dist.* (1993) 15 Cal.App.4th 1848, 1855.)

To show a district supervisor "knew or had reason to know" that a teacher is prone to sexually abuse a student, a plaintiff must prove either that the supervisor actually knew about the teacher's deviant propensities (see *Chaney v. Superior Court* (1995) 39 Cal.App.4th 152, 157 [no duty to prevent an assault absent "actual knowledge" of the perpetrator's deviant sexual inclinations]) or that circumstances put the supervisor on notice about them (see *Margaret W. v. Kelly R.* (2006) 139 Cal.App.4th 141, 155 [sexual assault must be foreseeable, not just conceivable]).  For example, a supervisor is put on notice of a teacher's deviant propensities if something in a teacher's background may reasonably be deemed to be a specific warning about them.  (Cf. *Juarez v. Boy Scouts of America, Inc.* (2000) 81

11

Cal.App.4th 377, 386, 397, 403 [nothing in the molester's background was deemed to be a "specific warning"].)

### 2. Summary Judgment Was Proper

Here, LAUSD argued no triable issue existed as to whether it took reasonable steps to protect its students, because no triable issue existed as to whether it had notice about the danger Salinas posed.

### a. Negligent Hiring

For their negligent hiring claim, plaintiffs alleged that if LAUSD had performed an adequate background check it would have discovered that Salinas had molested students before.

To counter the claim, the district presented evidence that it fingerprinted Salinas, commissioned background checks that came back clear, and required that Salinas swear under penalty of perjury that he was involved in no past or pending criminal matters.

Plaintiffs admitted these facts, and offered no rebutting evidence on this issue other than the testimony of some workers that *they* had not been subjected to background checks or required to provide references. Given plaintiffs' admission that Salinas himself was subjected to background checks, plaintiffs' evidence about the district's procedures in hiring other employees failed to establish a triable issue as to whether adequate background checks would have revealed that Salinas had molested students before.

### b. Negligent Retention

For their negligent retention claim, plaintiffs alleged that LAUSD knew or should have known that Salinas was abusing students but did nothing about it.

12

To counter the claim, LAUSD offered evidence that no one ever lodged a complaint about Salinas, and the first time LAUSD staff became aware of the abuse was when R.D.'s parents reported it, upon which LAUSD immediately removed Salinas from employment. This evidence shifted the burden to plaintiffs to establish a triable issue as to negligent retention. They failed to do so.

Plaintiffs admitted that the day Vasquez heard about Salinas abusing R.D., she notified DCFS and the LAPD, and Salinas never worked for LA's Best again.

Plaintiffs disputed LAUSD's knowledge of the abuse with three facts: Melara thought R.D. "was going to Salinas's class on a regular basis"; Melara testified that Vasquez found it "weird" that Salinas interacted more with female students than male students; and another coworker thought R.D. was Salinas's "teacher's pet."

The trial court properly found that these facts failed to raise a triable issue as to the actual or constructive knowledge of any LAUSD administrator or supervisor. No evidence indicated that the coworkers' opinions that R.D. was "going to" Salinas's classroom and was his "teacher's pet" were ever communicated to any supervisor. And no evidence indicated that Vasquez's hearsay impression that Salinas acted "weirdly" rose to a reasonable inference that he was abusing students.

### c. Negligent Supervision

For their negligent supervision claim, plaintiffs alleged that LAUSD knew or should have known that Salinas was abusing students but failed to investigate or provide reasonable supervision. When asked in interrogatories for the factual basis of this claim, plaintiffs asserted that Salinas's class was in a

13

secluded part of the campus, and he kept his classroom door closed.

In seeking summary disposal of the claim, LAUSD argued no evidence existed that the district negligently supervised Salinas or had reason to know he posed a risk to students. This is so, the district argued, because several witnesses testified that his classroom was not isolated, he kept the classroom door cracked open, and supervisors frequently visited. This evidence shifted the burden to plaintiffs to establish a triable issue.

They failed to do so.

No evidence suggested that Salinas's classroom was so isolated as to prevent oversight or put supervisors on notice that abuse was occurring within. The consensus was that the classroom could be seen from several locations, including Vasquez's office.

No evidence indicated that Salinas kept his classroom door closed while class was in session, much less that he did so to such an extent as to prevent oversight or put supervisors on notice that abuse was occurring within. In any event, a closed classroom door is a ubiquitous and often necessary phenomenon, suggesting only that teaching is occurring within, not abuse.

No evidence suggested that Salinas isolated students by sequestering them. C.J.B. testified that students would check in after school, stay in the play yard for an hour, have supper, and then go into the classrooms. That Salinas thereafter prohibited students from leaving the classroom suggested only that he was supervising them, not that he was abusing them.

Even if Salinas interacted more with female than male students, kept his classroom door closed, opted out of outdoor playtime, and prevented students from leaving the room, these

14

are matters of pedagogical discretion, and conveyed no specific warning about Salinas's deviant propensities. Absent hindsight, a teacher's solicitude to female students does not by itself suggest abuse is occurring.

Although plaintiffs adduced evidence that one or another of the school site supervisory personnel—Ramirez, Recart and Vasquez—failed to visit or observe *coworker* classrooms, and no one recalled seeing anyone visit Salinas's classroom, these scattershot omissions raised no triable issue even as to lack of supervision, much less as to constructive knowledge that Salinas was a sexual predator. That coworkers did not recall seeing supervisors visit Salinas's classroom did not establish that no visits occurred. Plaintiffs themselves testified that Vasquez visited their classroom.

Plaintiffs adduced evidence that Salinas was not given an employee evaluation but failed to explain why an evaluation would have been relevant. They adduced evidence that Vasquez did not meet with Salinas to review his activity planning sheets or discuss his performance as a program coach, but failed to explain how these measures would have alerted her that Salinas was a sexual predator.

In short, no evidence suggested that the district either ignored or set itself up to miss suspicious behavior or potential signs of abuse, and nothing the district observed or reasonably failed to observe gave it constructive knowledge that Salinas was a predator. Therefore, no triable issue exists as to whether the district failed to reasonably supervise Salinas.

15

### 3. LAUSD Thus Demonstrated the Actions Have No Merit

The district's burden on summary judgment was to establish that the actions have no merit. As I argue above, it did so by demonstrating no triable issue exists as to whether LAUSD took reasonable measures in hiring, supervising, and retaining Salinas.

The majority concludes that LAUSD failed even to raise the issue of whether it took reasonable measures in hiring, supervising, and retaining Salinas. (Maj. opn. *ante*, at p. 22 ["the duty of care . . . requires *reasonable* measures"].)

On the contrary, the district's entire motion was predicated on the measures it took. LAUSD used a screening application and conducted background checks before hiring Salinas, supervised him and disseminated policy materials while he worked for the district, and immediately and permanently suspended him and notified authorities when it discovered he was alleged to have molested R.D.

The district argued these measures were reasonable because it had no reason to suspect Salinas posed any more of a risk that is addressed by normal school policies regarding student safety.

The majority observes that LAUSD's separate statement focused on what the district knew or should have known only about Salinas, and did not address what LAUSD does more generally in hiring, retaining, and supervising employees such as Salinas. (Maj. opn. *ante*, at p. 21.) But the district was correct to focus its motion on the actions it took specifically with respect to Salinas because plaintiffs' theory of liability was based on those actions, not the district's practices more generally.

16

The majority holds that school district supervisors and administrators have a duty of care to use reasonable measures to protect students from foreseeable injury at the hands of others, and whether injury is foreseeable does not require actual or imputed knowledge about the specific employee, only about the potential for sexual abuse by school staff in general.

None of this is disputed here. LAUSD did not argue it *owed* no duty to use reasonable measures to protect plaintiffs until given specific reason to suspect Salinas, it argued it *fulfilled* its duty because the measures it took (even though it had no reason to suspect him) were reasonable considering what it knew at the time.

In other words, the district contested the extent of its actual or imputed knowledge not as an issue of duty but of breach, arguing its conduct was reasonable because it had no actual or constructive knowledge that Salinas was dangerous.

Therefore, the majority's holding that LAUSD owed plaintiffs a duty does not answer the issue on appeal: Whether a triable issue exists as to the reasonableness of the district's conduct in light of what it knew or should have known about Salinas.

LAUSD presented this issue and answered it, and summary judgment was properly granted. Therefore, I respectfully dissent.


CHANEY, J.


17